# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-CA-00689-SCT

*SANDRA ANN CRAFT IRBY*

*v.*

*ESTATE OF HENRY EDWARD IRBY,*
*DECEASED, BY GLORIA DEAN IRBY*
*MARSHALL, EXECUTRIX*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/18/2007 |
| TRIAL JUDGE: | HON. DAN H. FAIRLY |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | JOHN G. HOLADAY |
| | PRENTISS M. GRANT |
| ATTORNEYS FOR APPELLEE: | CHRISTOPHER A. TABB |
| | LISA ANDERSON REPPETO |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED- 04/23/2009 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRAVES, P.J., DICKINSON AND PIERCE, JJ.**

**PIERCE, JUSTICE, FOR THE COURT:**

¶1.     This case comes to the Court on appeal from the Rankin County Chancery Court, in

which a final judgment was entered granting Sandra Ann Craft Irby and Henry Edward Irby,

M.D., a divorce on the ground of irreconcilable differences.

**FACTS AND DISPOSITION BELOW**

¶2.    On May 18, 2005, after twelve years of marriage, Sandra filed a complaint for divorce in chancery court against her husband, Henry, on the grounds of habitual cruel and inhuman treatment and/or habitual drug use as provided by Mississippi Code Section 93-5-1; or, alternatively, based on irreconcilable differences as provided by Section 93-5-2. Henry answered the complaint and counterclaimed for divorce on July 6, 2005. Henry denied that Sandra was entitled to a divorce on any of the stated fault grounds, or a divorce based on irreconcilable differences, and in his cross-complaint asked for a divorce on the ground of habitual cruel and inhuman treatment. Sandra timely answered and denied that Henry was entitled to a divorce on his alleged fault ground.

¶3.    Both parties received notice in January 2006 that trial was scheduled for May 4, 2006. On May 3, 2006, Sandra filed a motion for continuance on the basis that Henry would object to all documents Sandra failed to produce in a timely manner, as well as to all witnesses not identified in a timely manner for discovery. The chancellor denied the motion, and ruled that the trial would begin the following day as scheduled.

¶4.    Shortly after the start of the trial on May 4, the parties filed with the court their *Consent of Parties to Divorce on Irreconcilable Differences*, jointly asking the court to grant them a divorce on the ground of irreconcilable differences. The parties submitted to the trial court the following issues for determination:

> 1.    All matters of real and personal property, including but not limited to the houses, land, condominiums, business property, retirements and any 401Ks accumulated during the marriage.

2

2. Attorney fees.
3. Alimony.
4. The equitable division of any marital assets.
5. Payment of debts.
6. The division of tax refunds/liabilities, including the lien of the Internal Revenue Service on record in Rankin County.
7. Mineral rights and oil & gas lease revenues including amounts in suspense by Denbury Resources.
8. The Back Clinic.
9. Entitlement to an order prohibiting Henry from conduct calculated or designed to harass, threaten, or intimidate Sandra or cause bodily harm to Sandra.
10. Entitlement to life insurance.
11. Cash held in the registry of the court.

¶5. At the conclusion of day two of the trial, the judge ordered the trial continued to May 16, 2006, in order to complete testimony in the matter. On May 11, 2006, due to her attorney's admission into the hospital, Sandra, pro se, moved for continuance. The motion was granted, and trial was continued to June 13, 2006. On June 5, 2006, due to her attorney's withdrawal from the case, Sandra, again pro se, requested another continuance. The chancellor approved the continuance, and ordered that trial be set for final hearing on August 22 and 23, 2006.

¶6. On July 21, 2006, Sandra, through new counsel, filed a motion to allow her to reopen the case and requested another continuance. The chancellor approved the motion. Trial was continued until September 14, 2006, and ultimately concluded on that date.

¶7. The court entered its final judgment on December 19, 2006, ruling that the parties were entitled to a divorce based on irreconcilable differences.

3

¶8. On December 29, 2006, Sandra filed a motion to reconsider. Before the trial court issued its ruling, Henry died on February 6, 2007. On March 28, 2007, Sandra filed a motion to declare the final judgment void, as afforded by Rule 60(b) of the Mississippi Rules of Civil Procedure. That motion was denied. Aggrieved, Sandra appeals to this Court raising the following assignments of error:

I.   THE TRIAL COURT ERRED WHEN IT EXCLUDED DOCUMENTS OFFERED AT TRIAL BY SANDRA DUE TO AN ALLEGED DISCOVERY VIOLATION.

II.  THE TRIAL COURT ERRED WHEN IT DENIED SANDRA'S MOTIONS TO CONTINUE THE TRIAL.

III. THE TRIAL COURT ERRED WHEN IT EXCLUDED AN EXPERT WITNESS OFFERED BY SANDRA AT TRIAL.

IV.  THE TRIAL COURT ABUSED ITS DISCRETION IN THE EQUITABLE PROPERTY DISTRIBUTION SET FORTH IN ITS FINAL JUDGMENT.

   A.   The trial court erred in finding that Sandra was responsible for any portion of the IRS taxes owed by Henry.

   B.   The trial court erred in finding that Sandra acquired as a marital asset approximately $75,000.00 in a home she owned prior to the marriage.

   C.   The trial court erred in finding that Sandra acquired approximately $193,000.00 in a personal injury lawsuit.

   D.   The trial court erred in finding that Sandra spent for her own personal use approximately $225,091.08 of Henry's money which he acquired from a personal injury lawsuit.

   E.   The trial court erred in failing to allot Henry value in the equitable distribution for the tractor and bulldozer.

4

F. The trial court erred in accepting Henry's speculative value of the Back Clinic at $128,000.00.

G. The trial court erred in failing to consider funds in Henry's bank accounts in relation to the equitable distribution.

H. The trial court erred in giving Henry the 1928 Willis Knight vehicle purchased by Sandra.

V. THE TRIAL COURT ERRED WHEN IT DENIED SANDRA'S MOTION TO DECLARE JUDGMENT NULL AND VOID.

## STANDARD OF REVIEW

¶9. The findings of a chancellor in domestic relations matters will not be disturbed by this Court unless the chancellor was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. *Montgomery v. Montgomery,* 759 So. 2d 1238 (Miss. 2000). For questions of law, the standard of review is de novo. *Duncan v. Duncan,* 774 So. 2d 418, 419 (Miss. 2000) (citation omitted).

## DISCUSSION

**I. DID THE TRIAL COURT ERR WHEN IT EXCLUDED DOCUMENTS OFFERED AT TRIAL BY SANDRA DUE TO AN ALLEGED DISCOVERY VIOLATION?**

**II. DID THE TRIAL COURT ERR WHEN IT DENIED SANDRA'S MOTIONS TO CONTINUE THE TRIAL?**

**III. DID THE TRIAL COURT ERR WHEN IT EXCLUDED AN EXPERT WITNESS OFFERED BY SANDRA AT TRIAL?**

¶10. Issues I, II, and III arise from and/or relate to the same grievance and will be addressed together. Sandra contends that the trial court excluded numerous documents,

5

along with an expert witness, based on either untimely production or untimely notification under the rules of discovery. Sandra asserts that this ruling was prejudicial to her case, as it prevented her from using evidence concerning her contributions to the marital assets and Henry's dissipation of vast amounts of money due to gambling. Sandra maintains that, instead of excluding the documents and the expert witness, the chancellor had every opportunity to grant a continuance of the trial in order to allow Henry time to review the documents and to prepare for her expert witness.

¶11. This Court reviews a trial judge's decision to impose sanctions for discovery abuses under an abuse-of-discretion standard. *Ladner v. Ladner,* 436 So. 2d 1366, 1371 (Miss. 1983). The decision will be affirmed "unless there is a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors." *Cooper v. State Farm Fire & Cas. Co.,* 568 So. 2d 687, 692 (Miss. 1990) (citation omitted). The decision to grant or deny a continuance is left to the sound discretion of the chancellor, "and will not be reversed unless there is shown a manifest abuse of discretion." *Rives v. Rives,* 416 So. 2d 653, 656 (Miss. 1982).

### A.    Document Admission.

¶12. The record shows that the parties engaged in protracted discovery throughout this case. On May 2, 2006, two days before trial, Sandra produced approximately 1,700 pages of documents as supplementation to discovery.[1] The matter was not brought to the trial

---

[1] According to the record, Henry propounded his discovery requests in July 2005. Sandra initially answered in December 2005, and supplemented as follows: 628 documents

court's attention until the day before trial when Sandra moved for a continuance to allow Henry additional time to review the documents, which the trial court denied. The record is unclear as to exactly what the documents consisted of, but indicates that a number of them apparently were records from various casinos that were to be used as evidence to establish Henry's alleged problem with gambling.[2]

¶13. When trial began the next day, Henry's counsel, on his promise, objected to the first document Sandra attempted to introduce on the basis that it was untimely supplemented. A lengthy back-and-forth between counsel then ensued regarding all of the documents produced on May 2. In his ruling, the trial judge held that, even though the documents were not timely produced for discovery, he would not exclude them outright from the trial; instead, he would admit them individually during trial if admissible and properly authenticated. The record reveals, however, that because a number of the documents could not be authenticated, most were not allowed into evidence.

¶14. A trial court's authority for imposing sanctions for discovery violations derives from two sources: Rule 37 of the Mississippi Rules of Civil Procedure and a trial court's inherent power to protect the integrity of its process. *Cooper Tire & Rubber Co. v. McGill,* 890 So. 2d 859, 864 (Miss. 2004) (citations omitted). Both Rule 37(e) and a trial court's own

---

on April 4, 2006; 202 documents on April 25, 2006; and 1,700 documents on May 2, 2006. She provided Henry with a witness list on May 1, 2006.

[2] The parties' joint tax returns from the years 1995, 1996, 1997, and 1998 did make it into the record. Each return reported gambling income offset by an equal gambling loss, respectively as follows: 1995–$314,746; 1996–$486,950; 1997–$285,360; 1998–$248,550.

authority provide our trial judges great flexibility with which to deal summarily with discovery abuses, whenever and however the abuse is brought to the attention of the court. *See* M.R.C.P. 37 cmt.; and ***Herrington v. Herrington***, 660 So. 2d 215, 219 (Miss. 1995) ("Under the inherent power of courts to protect the integrity of their process, courts may impose sanctions without a court order.") (citations omitted). As has been said by this Court, our procedural rules are "designed to assure to the maximum extent practicable that cases be decided on their merits," and not decided based on one party's unfair ambush. ***Harris v. Gen. Host Corp.,*** 503 So. 2d 795, 796-97 (Miss. 1986).

¶15. While there is no clear indication of deliberate gamesmanship at play here, the failure to produce the documents in a timely manner was consequential nonetheless. The trial judge, faced with a decision of whether to grant a continuance at the expense of the nonfaulting party or whether to proceed forward provisionally, chose in his discretion what he believed was more in the interest of justice and fair play. ***Huff v. Polk,*** 408 So. 2d 1368, 1371 (Miss. 1982).

¶16. The record supports this finding. Sandra failed to provide the trial court with a reasonable explanation for not having produced these documents in a timely manner. The trial court's decision on this point is affirmed.

### B. Testimony of Expert Witness Tom Dial.

¶17. On day two of the trial, Sandra sought to proffer the testimony of Tom Dial, a private investigator, who supposedly had witnessed Henry's visits to various casinos. Henry moved to exclude the investigator's testimony on the basis that Dial's investigative reports had not

8

been produced until nine days before trial, on April 25, and that Sandra had not disclosed that he was to testify at trial until May 1, three days before trial.

¶18. The trial court heard arguments from both sides on the matter. According to the record, Sandra had disclosed at her deposition held on March 16, 2006, that she had a private investigator. The record shows that Sandra possessed the investigator's reports for at least seven months prior to producing them on April 25.

¶19. The trial court found that Sandra had failed to timely provide the name of an expert witness and ruled that Dial would not be permitted to testify as to the contents of his investigative reports. At that point, Sandra again moved for a continuance to allow Henry additional time to prepare for her expert witness. That motion was denied.

¶20. Pursuant to Rule 26(f) of the Mississippi Rules of Civil Procedure, discovery responses are to be supplemented seasonably. There is no bright-line rule as to what amounts to seasonable supplementation. *Eastover Bank for Sav. v. Hall,* 587 So. 2d 266, 272 (Miss. 1991). Rather, "seasonableness must be determined on a case by case basis looking at the totality of the circumstances surrounding the supplemental information the offering party seeks to admit." *Blanton v. Bd. of Supervisors,* 720 So. 2d 190, 196 (Miss. 1998).

¶21. We note at the outset that, even though Dial was designated as an expert witnesses, the record negates categorizing him as the type of expert contemplated by Rule 26(b)(4)(A)(i) of the Mississippi Rules of Civil Procedure.[3] The record clearly shows that

_____

[3] Rule 26(b)(4)(A)(i) of the Mississippi Rules of Civil Procedure sets forth the proper procedure for obtaining the identity of an expert witnesses, not otherwise discoverable under

Dial, while maybe a witness with expertise, was foremost an "occurrence witness." In other words, having directly observed Henry's visits to casinos, conduct which Sandra alleges was detrimental to the marital estate, Dial was a witness to events at issue in this case. Thus, pursuant to Rule 26(b)(1) of the Mississippi Rules of Civil Procedure, both Dial's identity and the subject matter of his proposed testimony were discoverable matters. *See also **Ladner v. Ladner,*** 436 So. 2d 1366,1372 (Miss. 1983) (a party is entitled to a list of "occurrence witnesses" during discovery).

¶22.    After having responded in her deposition that she had hired a private investigator, Sandra, without reasonable explanation, waited until three days before trial to disclose that the investigator was to testify as a witness. When Henry moved to exclude that testimony, Sandra again requested a continuance so as to allow Henry additional time to prepare. The trial judge denied her request for the same reason he denied her request with regard to the untimely supplemented documents. Based on the record, this Court cannot say that the trial court abused its discretion both by excluding Dial as a witness and denying Sandra's request for a continuance. Issues I, II, and III are without merit.

####    IV.    THE TRIAL COURT ABUSED ITS DISCRETION IN THE EQUITABLE-PROPERTY DISTRIBUTION SET FORTH IN ITS FINAL JUDGMENT.

¶23.    Sandra avers that the trial court erred in the equitable distribution of the property of the parties, as there were a number of discrepancies between the trial court's final findings

---

subsection (b)(1) of Rule 26, which is through interrogatories, not depositions.

and the testimony at trial. She maintains that the trial court's findings are not supported by substantial credible evidence, and should be overturned.

¶24. For domestic matters on appeal, this Court is required to respect the findings of fact made by a chancellor supported by credible evidence and not manifestly wrong. *Newsom v. Newsom,* 557 So. 2d 511, 514 (Miss. 1990).

¶25. The division of marital assets is governed by *Hemsley v. Hemsley,* 639 So. 2d 909 (Miss. 1994), and *Ferguson v. Ferguson,* 639 So. 2d 921, (Miss. 1994). The chancellor must first identify whether the property to be divided is marital or nonmarital. *Hemsley,* 639 So. 2d at 915. The chancellor should then employ the following factors in arriving at an equitable division of marital assets:

> (1) Substantial contribution to the accumulation of the property, with factors to be considered such as a) direct or indirect economic contribution to the acquisition of the property, b) contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage, and c) contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets; (2) degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise; (3) market value and the emotional value of the assets subject to distribution; (4) value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse; (5) tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution; (6) the extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties; (7) the needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and (8) any other factor which in equity should be considered.

11

*Ferguson,* 639 So. 2d at 928.

¶26.  In the trial court's findings of fact and conclusions of law, the value of the marital estate, supplied by both documentary and oral evidence, was described as follows:

1.  Real Estate

Home and 280 Acres of Property
on Stump Ridge Road

Value: $ 1,525,000 [4]
Debt:  $    337,723
Equity: $ 1,205,000

Condominium at Orange Beach

Value: $   420,000
Debt:  $   160,000
Equity: $   260,000

2.  Automobiles

Chevrolet

Value:  $   12,000
Debt:   $    9,050
Equity: $    2,950

2001 Lincoln Navigator

Value:  $   18,000
Debt:   $    8,500
Equity: $    9,500

1927 Willis Knight

Value:  $   10,000
Debt:   $        0
Equity: $   10,000

2003 Cadillac Escalade

Value:  $   25,000
Debt:   $   18,075
Equity: $    6,925

1984 Ford F-150

Value:  $    1,500
Debt:   $        0

---

[4] According to our calculation, the Equity total should read as $1,187,277.

                                        Equity:    $         1,500

3.    Household Goods and Furnishings

        Lawn Mower                                  $         1,000
        Four-wheeler                                $         1,000
        Golf cart                                   $         2,000
        Furniture (antique)                         $        35,000
        Jewelry                                     $         5,000
        Equipment (business)                        $       128,000
        Guns                                        $         7,000
        Remaining household furniture               $        85,000
        Computer                                    $           150

4.    Bank Accounts

        Sandra Irby (Bank Plus)                     $        14,000
        Sandra Irby (Vision Bank)                   $         2,500
        Henry Irby (Bank Plus)                      $           126
        Henry Irby (Citizens Bank)                  $           176
        Henry Irby (Heritage Bank)                  $         1,540

5.    Misc. Property

        Bulldozer                        Value:    $ 20,000.00
                                         Debt:     $ 20,000.00
                                         Equity:   $      0

        Case                             Value:    $ 30,000.00
                                         Debt:     $ 30,000.00
                                         Equity:   $      0

        Denbury Resources
        (Oil and Gas)                    Value:    $56,000.00

        Gold Master Mining               Value:          0

        Equity in home deeded by Sandra
        to daughter Melissa Breedlove in
        2006 at 130 Landford Cove.       Value:    $ 75,000.00

AG Edwards Account (Sandra)     Value:  $ 2,583.06

6.    Debts

| | |
|---|---|
| Federal Land Bank (Home) | $ 7,382.25 |
| Federal Land Bank (Home) | $ 40,984.86 |
| Federal Land Bank (Home) | $ 170,751.30 |
| Federal Land Bank (Home) | $ 118,605.52 |
| Heritage Bank (Henry) | $ 48,293.67 |
| Heritage Bank (Henry) | $ 9,780.00 |
| American Express (Henry) | $ 1,600.00 |
| GMAC (Henry Cadillac Escalade) | $ 18,075.00 |
| Chase Mortgage (Orange Beach Condo) | $ 130,000.00 [5] |
| Priority One Bank (equipment loan at Back Clinic) | $ 62,000.00 |
| Trustmark (Sandra Lincoln Navigator) | $ 14,000.00 |
| Vision Bank | $ 43,000.00 |

7.    Other Debts Not Listed Elsewhere

| | |
|---|---|
| Taxes owed to Internal Revenue Service (plus interest and penalties) | $ 104,130.90 |

¶27.  Having identified the marital property, the trial court found that an equitable distribution of the marital estate, based on the evidence submitted at trial, would require the following divison:

| Item | Henry | Sandra |
|---|---|---|
| 2003 Cadillac Escalade | $9,500.00 | |
| 2001 Lincoln Navigator | | $8,000.00 |
| 1932 Chevrolet | $2,950.00 | |
| 1927 Willis Knight | $10,000.00 | |
| Lawn Mower | | $1,000.00 |

---

[5] According to the financial statements, the correct debt amount is $160,000, as is correctly denoted under the real estate valuation, *supra*.

| | | |
|---|---|---|
| Four-wheeler | | $1,000.00 |
| Golf cart | $2,000.00 | |
| Computer | | $150.00 |
| AG Edwards Account (Sandra) | | $2,583.06 |
| Equity in home deeded by Sandra to daughter Melissa Breedlove in 2006 at 130 Langford Cove, Brandon, Ms. | | $75,000.00 |
| The Back Clinic | | $66,000.00 |
| Non-antique Furniture | | $85,000.00 |
| | | |
| TOTAL: | $24,000.00 | $238,733.06 |

¶28.   In its final judgment granting the parties a divorce based on irreconcilable differences, the trial court found that each party should have use, possession, and ownership of their personal property and jewelry.  The trial court ruled that the real property (the property at Stump Ridge Road and the Orange Beach condominium) were to be sold, with the first $214,283.06 of net proceeds (after taxes) from the sales to be awarded to Henry, and the balance of the proceeds divided fifty percent to Henry, and fifty percent to Sandra.  The obligations of the parties to Federal Land Bank, Vision Bank, and the IRS were found to be joint debts, and were ordered to be paid from the sale of the real property.  The proceeds from the sale of the Orange Beach condo were to, first, pay the notes to Chase Mortgage, with the remaining balance to be divided equally.  Henry was ordered to pay seventy-five percent of the federal tax lien, including seventy-five percent of all penalties and interest at the time of the payment, and Sandra was ordered to pay the remaining twenty-five percent, including twenty-five percent of all penalties and interest at the time of the payment.  Henry was awarded exclusive ownership of the antique furniture inherited by him, together with his personal items, the 2003 Cadillac Escalade, the 1932 Chevrolet, the 1927 Willis Knight

15

vehicle, and the golf cart. Sandra was awarded exclusive ownership of her personal items, the Back Clinic, non-antique furniture in the home, computer, four-wheeler, lawn mower, 2001 Lincoln Navigator, and her AG Edwards account. Finally, the trial court ordered that the funds from the Denbury Resources (oil and gas lease) account were to pay current the notes on the real properties to prevent foreclosure during their listings.

### A. Sandra's responsibility for twenty-five percent of a Federal Tax Lien of $104,130.90 (plus interest and penalties) due to a business owned by Henry.

¶29. In his finding of facts and conclusions of law, the trial judge found the federal tax lien that had been assessed against a business owned by Henry to be a joint debt. Though Henry owned the business, and was primarily responsible for incurring the lien, the trial court determined that both parties nonetheless enjoyed the fruits of this business and that the assets of both parties would have been reduced equally, had the taxes been paid timely. The trial court also found that both parties jointly spent the proceeds from a settlement that was received from a lawsuit filed to recover these taxes. The trial court therefore apportioned Sandra twenty-five percent of the debt.

¶30. Citing the Internal Revenue Code, Sandra argues that, because she cannot be held criminally responsible for Henry's willful violation of the federal tax code, the tax debt cannot be considered a joint debt.

¶31. Under Mississippi law, tax liens and the consequences thereof to the marital estate fall under the *Ferguson* factors. *Ferguson,* 639 So. 2d at 928. As was found by the trial court, while Sandra may not knowingly have been the cause of incurring the tax lien itself, she

16

nonetheless bore some responsibility as far as the marital estate was concerned. In this Court's opinion, the trial court's decision that Sandra be responsible for twenty-five percent of this debt from her divided share of the marital estate is without error.

**B. Did the trial court err in finding that Sandra acquired as a marital asset approximately $75,000.00 in a home she had owned prior to the marriage?**

¶32. The trial court found the home at 130 Langford Cove to be a marital asset. Although Sandra had owned the home prior to the marriage, she began paying the mortgage with marital funds following the marriage. Based on her daughter's testimony at trial, the court determined that there was $75,000.00 of equity in the home. In making its determination, the trial court took into consideration the fact that Sandra also had purchased a number of residential lots, including a condominium, with marital funds. She later sold these properties, and was unable to account for the proceeds. The record supports this finding.

**C. The trial court's finding that Sandra acquired approximately $193,000.00 in a personal injury lawsuit.**

¶33. The trial court found that Sandra had acquired $193,000 from a personal injury lawsuit. Sandra correctly points out that the amount, as was stipulated to by Henry at trial, was actually $156,597.08. At trial, Sandra claimed that she had spent $111,657.57 out of her personal injury settlement award on marital debts incurred during the parties' initial separation, and therefore sought a credit in that amount. The trial court concluded that Sandra was not entitled to a credit, as she had failed to provide the court with any accounting of these alleged expenditures.

17

¶34. That aside, the record also shows that the trial court did not take Sandra's injury award itself into consideration in its equitable division of the marital assets. Thus, the misstated total was wholly inconsequential to the end result, and therefore harmless error.

**D. Did the trial court err in finding that Sandra spent for her own personal use approximately $225,091.08 of Henry's money which he acquired from a personal injury lawsuit?**

¶35. The trial court found that Henry had received approximately $400,491.08 from a personal injury lawsuit. According to the record, Henry had placed the funds into a joint account with Sandra. Sandra thereafter removed the funds and placed them in a different account and put the name of her youngest daughter from another marriage on the account "POD" (paid-on-death). In June 2004, Sandra placed Henry's name on the account, which at that point had a balance of $278,019.67. The following October, Henry removed $175,000 from that account and placed it into an account with another bank.

¶36. The trial court found that Sandra had spent $225,091.08 of Henry's settlement. However, the trial court also made a *Ferguson* finding and concluded that the money from Henry's settlement was a marital asset, dividing it evenly between the parties. *Ferguson*, 639 So. 2d. at 928. Thus, similar to Sandra's argument regarding her settlement award, the trial court's finding on this point was inconsequential to the final division.

**E. Whether the trial court erred in failing to allot Henry value in the equitable distribution for the tractor and bulldozer.**

¶37. Due to the debt incurred on each item, the trial court assessed no value on either. The

18

record supports this finding.

### F. The trial court erred in accepting Henry's speculative value of the Back Clinic at $128,000.00.

¶38. The only evidence presented to the trial court as to the value of the Back Clinic was the uncontroverted testimony of Henry. The chancellors of this state are not responsible for the evidence that is presented at trial. As the Court of Appeals has said, "it is incumbent upon the parties, and not the chancellor, to prepare evidence touching on matters pertinent to the issues to be tried." *Dunaway v. Dunaway,* 749 So. 2d 1112, 1118 (Miss. Ct. App. 1999). Where a party fails to provide information, the chancellor is entitled to proceed on the best information available. *Id.* The value of the Back Clinic was a factual finding supported by credible evidence. *Newsom*, 557 So. 2d at 514.

### G. The trial court erred in failing to consider funds in Henry's bank accounts in relation to the equitable distribution.

¶39. Sandra asserts that the chancellor did not consider all of Henry's bank accounts, and that the actual amounts in the accounts listed in Henry's financial statement submitted to the trial court were wrong.

¶40. According to the record, however, Sandra provided no evidence at trial to the contrary. Thus, this point is without merit. *Dunaway*, 749 So. 2d at 1118.

### H. The trial court erred in giving Henry the 1928 Willis Knight vehicle purchased by Sandra.

19

¶41.    The trial court found the Willis Knight vehicle to be marital property and apportioned the asset to Henry as part of the equitable distribution of the property.  *Ferguson,* 639 So. 2d at 928.  The record supports this finding.

¶42.    In considering the *Ferguson* factors, we cannot say that the trial court manifestly erred in the division of the marital assets.  *Id.*

## V.    WHETHER THE TRIAL COURT ERRED WHEN IT DENIED SANDRA'S MOTION TO DECLARE THE JUDGMENT NULL AND VOID.

¶43.    Sandra avers that the proceedings of the divorce did not comply with the statutory requirements of Mississippi Code Section 93-5-2.  She argues that, despite the parties having entered into a consent agreement to divorce on the ground of irreconcilable differences at the beginning of the hearing on May 4, 2006, the parties never withdrew the fault grounds stated in their original pleadings.  Therefore, according to Sandra, pursuant to Section 93-5-2(5), which provides that "no divorce shall be granted on the ground of irreconcilable differences where there has been a contest or denial . . . [unless] the contest or denial has been withdrawn or cancelled by the party filing the same by leave and order of the court,"  the final judgment awarding the parties a divorce on said grounds is void. Miss. Code Ann. § 93-5-2(5) (Rev. 2004).

¶44.    Henry's estate ("Estate") argues, however, that when read in its entirety, Section 93-5-2(5) is excepted by subsection (3) of the statute, which allows parties to consent to a divorce on the ground of irreconcilable differences and to stipulate to what issues they wish the court to decide for them.  Miss. Code Ann. §  93-5-2(3) (Rev. 2004).  The Estate contends that the

20

parties clearly consented to divorce on the ground of irreconcilable differences on the first day of the hearing, and submits that at no time did Sandra ask for leave to withdraw her consent, nor did she raise the issue in her Motion for Reconsideration, and that she wishes to do so now only because Henry has passed away.

¶45. At the beginning of the trial, a lengthy exchange occurred regarding discovery violations and the admissibility of evidence. The parties then requested a brief recess, following which Sandra and Henry jointly filed with the court a written instrument entitled *Consent of Parties to Divorce on Irreconcilable Differences*. In open court, the trial judge read into the record that both parties had requested that a divorce based on irreconcilable differences be granted, and that they had agreed to submit to the court for its determination all matters of real and personal property, and all other things listed in the instrument.

¶46. Review of the document shows that each party, upon advice of counsel, voluntarily agreed to be bound by the court's decision and understood that it would be a lawful judgment, and that the consent granted could not be withdrawn by either party without leave of the court. The document was signed by both parties and their attorneys. The record, however, contains no mention of an order being issued or requested allowing the parties to withdraw or cancel the contest or denial requested by each in their respective complaint and counter complaint for divorce. Nor did Sandra seek leave of court to withdraw her consent.

¶47. In denying Sandra's motion to set aside the judgment as void, the chancellor reasoned as follows:

21

By the clear and unambiguous language of the statute, 93-5-2(5), a divorce on the grounds of irreconcilable differences may be granted only where and if contests or denials have been withdrawn or cancelled with leave and by order of the court. The exception to this is contained in the first 10 words of 93–5-2(5): "Except as otherwise provided in subsection (3) of this section . . . ." It is the opinion of this court that in writing the statute in this manner, the legislature intended that when the parties execute a consent under subsection (3), the requirements of subsection (5) are not required. Logically, if the parties consent to a divorce on the ground of irreconcilable differences and meet the requirements of subsection (3), such an act necessarily shows and establishes that the parties intend to and do withdraw all contests and denials. It is the opinion of this court that the requirements of subsection (5) are applicable only where a divorce commences as a contested divorce with grounds asserted and is concluded with a written agreement containing adequate and sufficient provision for the custody and maintenance of any children and for the settlement of any property rights between the parties. Miss. Code Ann. § 93-5-2.

Moreover, assuming the plaintiff is correct in her motion and were the court to grant the plaintiff's motion, such would encourage parties to enter into a consent pursuant to subsection (3), await the decision of the trial court, and then assert that the judgment is void. Generally, matters not objected to contemporaneously with the occurrence cannot later be considered error. This court finds that the plaintiff's assertion that the parties, herself included, did not comply with subsection (5) should and had to have been made at the commencement of the trial, not after 3 days of proof and testimony, and because of her dissatisfaction with the decision of the trial court. Such a claim should and must be made at the time the alleged error or failure occurred, not post judgment.

¶48. We agree. Section 93-5-2 governs divorces based on irreconcilable differences, and states in pertinent part as follows:

(3) If the parties are unable to agree upon adequate and sufficient provisions for the custody and maintenance of any children of that marriage or any property rights between them, they may consent to a divorce on the ground of irreconcilable differences and permit the court to decide the issues upon which they cannot agree. Such consent must be in writing, signed by both parties personally, must state that the parties voluntarily consent to permit the court to decide such issues, which shall be specifically set forth in such

22

consent, and that the parties understand that the decision of the court shall be binding and lawful judgment. Such consent may not be withdrawn by a party without leave of the court after the court has commenced any proceeding, including the hearing of any motion or other matter pertaining thereto. The failure or refusal of either party to agree as to adequate and sufficient provisions for the custody and maintenance of any children of that marriage or any property rights between the parties, or any portion of such issues, or the failure or refusal of any party to consent to permit the court to decide such issues, shall not be used as evidence, or in any manner, against such party. No divorce shall be granted pursuant to this subsection until all matters involving custody and maintenance of any child of that marriage and property rights between the parties raised by the pleading have been either adjudicated by the court or agreed upon by the parties and found to be adequate and sufficient by the court and included in the judgment of divorce.

(5) Except as otherwise provided in subsection (3) of this section, no divorce shall be granted on the ground of irreconcilable differences where there has been a contest or denial; provided, however, that a divorce may be granted on the grounds of irreconcilable differences where there has been a contest or denial, if the contest or denial has been withdrawn or cancelled by the party filing same by leave and order of the court.

(6) Irreconcilable differences may be asserted as a sole ground for divorce or as an alternate ground for divorce with any other cause for divorce set out in Section 93-5-1.

Miss. Code Ann. § 93-5-2 (Rev. 2004).

¶49. The legislative purpose behind Section 93-5-2 "is to provide a less painful alternative to the traditional grounds for divorce which require[s] . . . parties to publicly put on proof of sensitive private matters." *Grier v. Grier,* 616 So. 2d 337, 339 (Miss. 1993). The statute expressly permits parties to "bargain on the premise that reaching an agreement will avoid the necessity of presenting proof at trial." *Id.* "The cornerstone of the process is mutual consent." *Id.* To ensure that end, the statute contains certain conditions. *Perkins v. Perkins,* 787 So. 2d 1256, 1261 (Miss. 2001) (citations omitted). The chief of these conditions is,

"that neither spouse contest its granting." ***Id.*** (quoting ***Sanford v. Sanford,*** 749 So. 2d 353, 357 (Miss. Ct. App. 1999)).

¶50.  Such was the understanding in ***Massingill v. Massingill,*** 594 So. 2d 1173 (Miss. 1992), in which the parties, having failed to prove a fault-based divorce, were granted a divorce based on irreconcilable differences, having pleaded that ground in the alternative. In reversing, this Court held that simply pleading the ground is not enough to satisfy the consent provisions required by subsection (3).[6] ***Id***. at 1176.  These provisions are that the consent (1) must be in writing and signed by both parties; (2) must state that the parties voluntarily consent to permit the court to decide the issues upon which the parties cannot agree; (3) must specifically set forth the issues upon which the parties are unable to agree; and (4) must state that the parties understand that the decision of the court shall be a binding and lawful judgment. ***Id.*** at 1177.  The Court found that, even though both parties had requested a divorce based on irreconcilable differences, the husband nonetheless had denied that the wife was entitled to a divorce on this ground, and had also filed a complaint claiming fault grounds. ***Id***. at 1778.  By virtue of subsection (5), there remained both a contest and denial. ***Id.***  The Court opined, "[a]ccordingly, the facts negate any conclusion there was *mutual consent* to a divorce on the ground of irreconcilable differences." ***Id.***  (citation

---

[6] Section 93-5-2 was amended in 1990 to provide for subsection (3), which ***Massingill*** termed the "trial by mutual consent" provision. ***Massingill,*** 594 So. 2d at 1176; Miss. Code Ann. § 93-5-2 (Rev. 2004).

omitted) (emphasis added). Without speaking any further on subsection (5), the *Massingill* Court concluded on this point with the following:

> [I]t is conceivable the required mutual consent in writing could have been accomplished by written stipulation, written agreement, or by some other viable means either prior to or during the last appearance before the chancellor.

*Id.*

¶51. In *Perkins*, this Court reversed a chancellor's judgment granting a divorce based on irreconcilable differences as requested in a settlement agreement between the spouses for its failure to comply with a number of statutory requirements set forth by Section 93-5-2. *Perkins*, 787 So. 2d at 1264-65.[7] Though subsection (3) was not at issue, the *Perkins* Court's opinion nonetheless expounded on some of *Massingill's* implications. *Id.* at 1263. Of relevance was *Perkins's* treatment of a point argued by the appellee in countering the appellant's charge that the appellee had failed to withdraw his original fault grounds. *Id.* at 1262. The appellee argued that subsection (5) was met when the settlement agreement was signed. *Id.* *Perkins* responded only by saying that the Court interprets subsection (5) as pertaining to cases where irreconcilable differences had been pleaded in the alternative to fault grounds, which neither of the Perkinses had done. *Id.* at 1262.

¶52. The *Perkins* Court then addressed the appellee's main contention that each of the procedural shortcomings in the matter were technical flaws and should be considered harmless error, claiming that the appellant had failed to show prejudice. *Id.* at 1262-63. In

---

[7] Because the parties were not submitting any issues for the trial court to decide, subsection (3) did not apply.

25

so doing, *Perkins* acknowledged this Court's volition, in some instances, to affirm a lower court's judgment granting a divorce based on irreconcilable differences despite failure to follow certain procedural safeguards. *Id.* at 1262-64. However, the Court then expressly indicated this is not appropriate when a party's substantive rights are at issue. *Id*. at 1264. Notably, *Perkins* also stated that "[h]ad either party pled irreconcilable differences as an alternative, this case would be in line with [*Rounsaville v. Rounsaville,* 732 So. 2d 909 (Miss. 1999)], and the parties could have agreed to a property settlement on the day of trial." *Id.* at 1264. *Rounsaville* upheld a trial court's decision to grant a divorce based on irreconcilable differences where, at the time of the granting of the divorce, the parties had not entered into a property settlement, nor had the trial court adjudicated the presented issues as required under the statute. *Rounsaville,* 732 So. 2d at 911 (noting that, although this was error, it was harmless error since the appellant demonstrated no prejudice which would make the error reversible).

¶53.   We find that the facts here differ from those which determined the outcome in both *Massingill* and *Perkins*, as the record in this case clearly shows mutual consent. Sandra and Henry fully complied with the procedural requirements set forth in subsection (3). Both, along with their attorneys, signed the written consent agreement; the agreement expressly stated that both parties voluntarily consented to permit the court to decide the issues upon which they could not agree; it specifically set forth those issues; and both expressly acknowledged their understanding that the decision of the court would be a binding and lawful judgment. The agreement was then read into the record in open court. This

26

distinguishes this case from both *Massingill* and *Perkins*. Unlike what concerned the Court in those two cases, our appellant's substantive rights are not in question.

¶54. It is well understood that divorce in Mississippi is governed by statute, and that its provisions must be strictly complied with. *Perkins,* 787 So. 2d at 1264. The plain language of subsection (5) mandates that a contest or denial be withdrawn or canceled, by leave and order of the court, by the party who filed the contest or denial. This is a procedural safeguard which has existed within the framework of Section 93-5-2 since its promulgation. *See e.g. Alexander v. Alexander,* 493 So. 2d 978, 979 (Miss. 1986) (discussing Miss. Code Ann. § 93-5-2 (Supp. 1985)). However, the exception clause, which was added in 1990 when the statute was amended to provide for "trial by mutual consent," clearly indicates that subsection (5) should be read in conjunction with subsection (3). Once the parties fully and properly acceded to the procedural strictures of subsection (3), the safeguards provided by subsection (5) were no longer necessary.

¶55. The trial court's decision denying Sandra's motion to set aside the final judgment decreeing an irreconcilable-differences divorce is affirmed.

## CONCLUSION

¶56. For the foregoing reasons, this Court affirms the judgment of the Rankin County Chancery Court.

¶57. **AFFIRMED.**

**WALLER, C.J., CARLSON AND GRAVES, P.JJ., DICKINSON, RANDOLPH, LAMAR, KITCHENS AND CHANDLER, JJ., CONCUR.**

27