FAIR, J.,
dissenting:
¶ 23. I respectfully dissent and would affirm the judgment of the trial court.
¶ 24. Samantha raises only two specific issues on which she bases her appeal:
(1) “The Chancery Court Judge erred in entering a judgment of divorce on the grounds of irreconcilable differences without a signed property settlement agreement by the parties”; and
(2) “The Chancery Judge erred in proceeding to enter the final judgment of divorce on the grounds of irreconcilable differences when there was a pending motion to recuse pending before the judge.”
¶25. The second issue, not addressed by the majority, requires little discussion. A party who files a motion must obtain a ruling on the motion prior to final judgment. See Martin v. State, 354 So.2d 1114, 1119 (Miss.1978). Samantha failed to do so. If the trial judge denies a recu-sal motion or fails to rule on the motion in accord with Uniform Chancery Rule 1.11 within 30 days following its filing, Mississippi Rule of Appellate Procedure 48B provides a fourteen-day opportunity to seek review by the Mississippi Supreme Court. In the event of failure to seek review of the chancellor’s “action (or lack thereof)” within that period, “this issue is time-barred.” Doll v. BSL, Inc., 41 So.3d 664, 669 (¶ 14) (Miss.2010). Because Samantha failed to seek review of her recusal request within the time allowed, she has waived this argument.
¶ 26. Samantha next urges that the ID divorce statute, Mississippi Code Annotated section 93-5-2 (Supp.2011), requires personal signatures on a settlement agreement. Whether signatures are required is at the center of ongoing discussions by our state’s chancellors over how to deal with settlements reached “on the courtroom steps.” In ID divorce cases, issues set for trial are often the subject of last-minute agreements made in hallways and anterooms.
¶ 27. The statute and its interpretation in case law under such circumstances is unclear. Bougard v. Bougard, 991 So.2d 646 (Miss.Ct.App.2008) and Cobb v. Cobb, 29 So.3d 145 (Miss.Ct.App.2010) were specifically cited and relied on by the trial court in its determination that the written transcript of a settlement agreement announced in open court is sufficient compliance with the “written agreement” requirement of the statute. In both Bougard and Cobb, the trial courts used a similar process to the one followed in this case, and each time it was found statutorily acceptable. The majority erroneously distinguishes those cases. I suggest they should be either recognized as controlling precedent or overruled.
¶ 28. Samantha’s appeal is premised on the limited proposition that without the parties’ personal signatures, an official transcript of a property settlement announced in open court is not a binding contract and is neither enforceable nor valid compliance with the terms of section 93-5-2.
¶29. There is no specific “signature requirement” for property settlement *676 agreements in the statute. Section 93-5-2(2) states:
If the parties provide by written agreement for the custody and maintenance of any children of that marriage and for the settlement of any property rights between the parties and the court finds that such provisions are adequate and sufficient, the agreement may be incorporated in the judgment, and such judgment may be modified as other judgments for divorce.
Similarly, there are no cases that mandate such a requirement. The wording of the statute requires party signatures only on their consent in the form and manner set out in subsection (3) of the statute:
If the parties are unable to agree upon adequate and sufficient provisions for the custody and maintenance of any children of that marriage or any property rights between them, they may consent to a divorce on the ground of irreconcilable differences and permit the court to decide the issues upon which they cannot agree. Such consent must be in writing, signed by both parties personally. ••.
Subsection (3), added in 1990 to the 1978 statute, was extensively addressed in Irby v. Estate of Irby ex rel. Marshall, 7 So.3d 223 (Miss.2009). In that decision, the supreme court determined that subsection (3) is standalone. Its own terms negate any need to follow other portions of the statute when proceeding under subsection (3). Once a written and signed consent has been approved, the litigation focus changes from grounds to the resolution of contested issues over children and property. Those issues are to be resolved by the court after a hearing, but often the court ends up with nothing to decide because the parties have resolved the issues a few minutes prior to trial.
¶ 30. In addition to filing their consent and announcing settlement of most, if not all, issues set to be tried, the Sanfords complied with subsection (5) of the statute by filing a motion for withdrawal of fault grounds on which an order was entered. Though a complete settlement stipulation was declared in the consent, the parties at the same time noted a possibility that one issue might remain for the court’s decision. As anticipated, marital personalty becamé the subject of dispute and required court orders for division. However, any need for such orders disappeared when Leslie agreed to pay Samantha $12,000 for her interest. This agreement was likewise announced to the court but was not set out in a document “personally signed by both parties.” Miss.Code Ann. § 93-5-2(3).
¶ 31. The parties’ main agreement, covering all other issues between them including their child and their five major assets, was not immediately written but was to be entered by stipulation on the record and incorporated by reference into their signed consent agreement. Both promised, under penalty of contempt, to sign a typewritten version after it was prepared. However, the court reporter’s transcript of the agreement, rather than the anticipated typed version with signatures, made it into the final judgment of divorce over a year later.
¶ 32. If signatures are required, then the majority opinion is correct; reversing and remanding for a full trial on all issues would be appropriate. But nothing in the statute or applicable case law requires the personal signatures of parties on their written agreement regarding child and property related issues. The statute only requires that there be a “written agreement” found by the court to be “adequate and sufficient.” Miss.Code Ann. § 93-5-2(2). While signatures on property settlement agreements are considered best *677 practice, they are not required by the statute. See id.
¶ 3B. On September 10, 2009, the San-fords, personally and through counsel in open court, announced the details of their child custody and property agreement. It was transcribed later that day. The transcript, a written agreement, was recognized of record during a May 24, 2010 hearing. Though never signed by the parties personally, it was described and incorporated by reference into the consent “in writing” that they signed and filed on September 10, 2009.
¶ 34. In the final judgment of divorce, the trial court specifically relied on Bou-gard and Cobb in holding that the transcript satisfied the statute’s “written agreement” requirement. The majority distinguishes those eases rather than recognizing their precedential validity.
¶ 35. Those two cases remain good law on whether a property settlement agreement may be announced on the record in lieu of filing a typed or handwritten version of that same agreement. Once transcribed, the “written agreement” requirement of the statute has been fulfilled. Subsection (2) does not require personal signatures of the parties on the property settlement agreement; only the consent document described in subsection (3) requires signatures. This conclusion comports with the supreme court’s holding in Irby, 7 So.3d at 238 (¶ 50) (quoting Massingill v. Massingill, 594 So.2d 1173, 1178 (Miss.1992)), where it stated:
It is conceivable the required mutual consent in writing could have been accomplished by written stipulation, written agreement, or by some other viable means either prior to or during the last appearance before the chancellor.
¶36. Cassibry v. Cassibry, 742 So.2d 1121 (Miss.1999), is asserted by the majority as the lead case controlling the validity of an ID divorce in which an open-court, on-the-record stipulation is considered. As in this case, the parties stood up and announced the details of their agreement for custody and maintenance of their children and settlement of any property rights. Their agreement was approved, and they were granted an ID divorce. The judgment of divorce, however, was found incompatible with the statute and rejected because the consent was not written and personally signed as required. The court ruled:
Although it appears that both parties were in agreement to the settlement agreement, no written, executed consent agreement was accomplished prior to or after the granting of a divorce on the grounds of irreconcilable differences. The chancellor should have recessed and required the parties to execute and file the written agreement prior to the additional proceedings.
Id. at 1125 (¶ 12) (emphasis added).
¶ 37. It is important to note that no written agreement of any sort was executed and filed by the parties in Cassibry. “[Njothing in [section] 93-5-2 or the case law interpreting the statute indicates] that an oral agreement by the parties is sufficient to satisfy its requirements. To the contrary, the plain language of the statute dictates that the consent agreement be written and signed by both parties.” Cook v. Cook, 725 So.2d 205, 207 (¶ 7) (Miss.1998) (emphasis added).
¶ 38. If signatures are to become necessary on property settlements as well as consent agreements, the majority should expressly overrule Bougard, Cobb, and any other cases decided by this Court that have found written, but unsigned, property and child custody agreements to be effective.
*678 ¶ 89. I prefer an interpretation of the statute that encourages final settlement by the parties, and I agree with the supreme court’s approach in Williams v. Williams, 37 So.3d 1171, 1174 (¶ 5) (Miss.2010):
Mississippi law favors settling disputes by agreements. In re Dissolution of the Marriage of De St. Germain, 977 So.2d 412, 420 (¶ 23) (Miss.Ct.App.2008). Absent fraud or overreaching, parties are afforded wide latitude in entering property settlement agreements. Steiner v. Steiner, 788 So.2d 771, 776 (¶ 17) (Miss.2001). Property settlement agreements are contractual obligations. West v. West, 891 So.2d 203, 210 (¶ 3) (Miss.2004) (citation omitted). When the par ties have reached [an] agreement and the chancery court has approved it, [the appellate court] ought to enforce it and take a dim view of efforts to modify it, as we ordinarily do when persons seek relief from their improvident contracts. Id. at 211 (¶ 15) (citation omitted).
¶ 40. The Sanfords reached an agreement. It was announced in open court, and the chancellor found it adequate and sufficient. The announced agreement was transcribed, satisfying the “written agreement” requirement. A year and five days after the settlement was transcribed, when the sole remaining issue was also announced and approved, the court entered an ID divorce judgment incorporating and attaching the transcript. I believe this represents a statutorily acceptable procedure. As the only substantive issue raised by Samantha on appeal is whether signatures are required on the written property settlement agreement, I would affirm the chancellor’s judgment.
BARNES AND CARLTON, JJ., JOIN THIS OPINION.