# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CA-00745-COA

DANIEL TYLER HODGE                                             APPELLANT

v.

BRITNI ANN HODGE                                               APPELLEE

DATE OF JUDGMENT:            05/24/2024
TRIAL JUDGE:                 HON. STEPHEN TRAVIS BAILEY
COURT FROM WHICH APPEALED:   PONTOTOC COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:      J. DOUGLAS FORD
ATTORNEY FOR APPELLEE:       JONATHAN W. MARTIN
NATURE OF THE CASE:          CIVIL - DOMESTIC RELATIONS
DISPOSITION:                 REVERSED AND REMANDED - 10/07/2025
MOTION FOR REHEARING FILED:

**BEFORE CARLTON, P.J., LAWRENCE AND WEDDLE, JJ.**

**LAWRENCE, J., FOR THE COURT:**

¶1.     Daniel Tyler Hodge (Tyler) and Britni Ann Hodge (Britni) were married and shared one child.  The couple separated in 2022, and Britni filed a complaint for divorce in Pontotoc County on multiple grounds, including habitual cruel and inhuman treatment.  Approximately one month later, however, Tyler and Britni filed a new, joint complaint for an irreconcilable differences divorce in the same court and attached an agreement addressing custody of their child and distribution of property.  After the chancery court granted the irreconcilable differences divorce, the parties began filing motions for contempt and modification, seeking to enforce the final divorce decree.  Eventually, approximately one year after the final divorce decree was entered, Britni filed a petition to set aside the divorce decree, alleging

Tyler forced her to sign it under duress. Following a hearing, the chancellor entered an order holding that Tyler had committed fraud by filing the joint complaint with Britni while being aware of the previous complaint Britni had filed but failing to advise the court. The court declared the previously entered final divorce decree void. Aggrieved, Tyler appeals. After review, we find insufficient evidence of fraud and reverse and remand.

## FACTUAL BACKGROUND

¶2. Tyler and Britni Hodge were married on December 15, 2017, in Pontotoc County, Mississippi.[1] The couple shared one child, a daughter named HYH,[2] who was born in January 2017. In approximately August 2022, Tyler and Britni separated. On October 5, 2022, Britni filed a complaint for a divorce in the Pontotoc County Chancery Court alleging habitual cruel and inhuman treatment; habitual use of morphine, opium, or "other like drug"; habitual drunkenness; or, in the alternative, irreconcilable differences. Britni's complaint was signed by her attorney Jonathan W. Martin of Tupelo, Mississippi. Tyler was properly served with process on approximately October 12, 2022. Tyler did not file an answer or counterclaim in that cause of action.

¶3. Despite Britni's initial, still-pending complaint, on November 18, 2022, Tyler and Britni filed a joint complaint for a divorce based on irreconcilable differences in the Pontotoc

---

[1] The record reflects conflicting dates for Tyler and Britni's marriage. The parties' joint complaint states that they were married "on or about December 24, 2018," while the chancellor's final judgment states the marriage occurred on December 15, 2017. We utilize the date set out in the judgment by the chancery court.

[2] In the interest of privacy, we use the minor child's initials.

County Chancery Court.  On the same day, Tyler and Britni filed an agreement addressing custody of HYH, visitation, child support, and the property settlement ("custody agreement and associated agreements").  The joint complaint and custody agreement were signed by both parties individually, Tyler's counsel (J. Lance Butler of Oxford, Mississippi), and Britni, **pro se**.  Notably, the custody agreement stated in one section that "Husband is represented by J. Lance Butler, and **Wife is represented by Jonathan W. Martin**." (Emphasis added).  But Martin did not sign the petition.

¶4.     On February 8, 2023, Tyler's attorney, Butler, received a letter from the chancellor stating that the custody agreement needed to be amended.  Specifically, the chancellor was concerned by the lack of "clear, adequate, and sufficient provisions" for the terms of custody during the fifth week of every month and for out-of-pocket payments for any of HYH's medical expenses costing less than $100.00.[3]  Presumably, the parties made the chancellor's suggested amendments.[4]  The chancery court entered the final divorce decree on March 6, 2023, and attached the parties' custody and property agreements as well.

_____

[3]  The chancellor also noted that the language "primary and paramount" should be removed from the custody agreement's requested "primary and paramount joint physical custody, care, and control of the minor child."  The chancellor stated, correctly:

> [O]ur appellate courts have determined there is actually no provision under the statute for 'primary' physical custody." *See Shows v. Cross*, 238 So. 3d 1224, 1227 n.2 (Miss. Ct. App. 2018) (quoting *Rush v. Rush*, 932 So. 2d 794, 796 (Miss. 2006)).

[4]  The chancellor's letter was filed on the docket when it was sent, and the next docket entry is the March 6, 2023 divorce decree.

3

¶5.     Just two months after the final divorce decree was entered, on May 19, 2023, Tyler filed a petition for modification and an emergency motion for temporary injunctive relief and for contempt and other relief.  Tyler cited "a material and substantial change in circumstances[,]" specifically that Britni "ha[d] cohabited with a person of the opposite sex that is not her husband while [HYH wa]s present."  More concerning, Tyler stated that "from information and belief[,]" HYH slept in the same bed as Britni and the adult male, and Britni "leaves [HYH] alone in bed with this adult male."  Tyler alleged that "the use of alcohol and drugs in the presence of" HYH may have also occurred.  Such behavior, Tyler argued, was in violation of the parties' custody agreement.  Tyler asked that the court permit HYH to stay with him "until a further investigation" and hearing could be conducted.

¶6.     On May 24, 2023, Jonathan Martin (attorney for Britni) filed a notice of appearance in the matter.  Britni filed her answer to Tyler's petition on May 26, 2023, including a **counterclaim** for contempt, modification, and other relief.  On May 30, 2023, the chancellor appointed a guardian ad litem to the case.  On July 27, 2023, Tyler filed his responses and defenses to Britni's counterclaim as well as a motion to dismiss.  On August 16, 2023, Tyler filed a motion in limine and a stipulation regarding Britni's previous "Petition for Domestic Abuse Protection Order" against Tyler.  A hearing was held concerning Britni's domestic abuse allegations on June 2, 2023, and the court found that Britni did not "prove her allegations of abuse by a preponderance of the evidence[.]"[5]  Tyler requested in his motion

---

[5]  Britni never alleged the final divorce decree was void, voidable, or should be set

that any discussion of the abuse allegations and the associated hearing be limited.

¶7.    On August 29, 2023, Britni filed a motion for contempt and other relief because Tyler had "refused to provide Britni with his current telephone number." On September 20, 2023, the chancellor entered an agreed-upon order to substitute Tyler's counsel (Butler) with Chereka L. Witherspoon-White. One week later, Witherspoon-White filed a motion to continue the case due to conflicts with her schedule. On October 17, 2023, the court entered an agreed interim order requiring that both Britni and Tyler undergo drug testing and holding all other matters "in abeyance."

¶8.    On November 8, 2023, Britni filed a third motion for contempt and for emergency relief seeking to enforce the final divorce decree. She referenced the chancellor's final divorce decree and the accompanying interim order requiring nail- or hair-follicle drug testing, stating that she made "an effort to go above and beyond what the [c]ourt required" by paying for a hair-follicle test after being told her nails were too short for a sample. Britni alleged that Tyler and his new wife were "attempt[ing] to evade drug screening" and that Tyler was "alienat[ing]" HYH from Britni. She noted in the motion that Tyler "ha[d] demonstrated chronic refusal to abide by this [c]ourt's orders" and should therefore "be incarcerated[.]" Tyler filed an answer to this motion on November 14, 2023.

¶9.    On November 30, 2023, Tyler filed a motion for emergency suspended or supervised visitation of HYH, citing Britni's relationships with other adult males and reports from HYH

---

aside.

5

that she was "inappropriately touch[ed]" while in Britni's care. On December 14, 2023, Britni filed a motion to amend her answer to the petition for modification. She attached the proposed amended answer, which now included allegations that "Tyler's continued alienation" of HYH from her mother constituted a material change in circumstances. Britni requested that she be permitted to claim HYH as a dependent for state and federal taxes and be given physical custody of HYH. On December 20, 2023, Tyler filed an answer opposing Britni's motion to amend her answer to the petition for modification. On January 9, 2024, the court entered an agreed order granting Britni leave to amend her answer to the petition for modification.

¶10. On February 27, 2024, Britni filed a Rule 60(b)(4) motion to declare the court's final divorce decree "void under the doctrine of claim splitting" and argued that Tyler "wrongfully and through duress convinced Britni to execute the [j]oint [c]omplaint for [d]ivorce" and the associated agreements "without acknowledgment or regard for the pending divorce action—which remains pending to this day." *See* M.R.C.P. 60(b)(4). On February 28, 2024, Chancellor Jacqueline Mask entered an order reassigning the case to Chancellor Stephen T. Bailey. On April 8, 2024, Tyler's attorney (Chereka L. Witherspoon-White) filed a motion for leave to withdraw from the case and to be substituted with J. Douglas Ford.[6] On April 9, 2024, Tyler filed a response to Britni's motion to declare the final divorce decree void.

---

[6] The motion was evidently granted, but the record before us does not contain an official order stating such.

In that response, Tyler noted that he had remarried.

¶11.    On April 17, 2024, the chancery court conducted a hearing on Britni's motion. The only witness called to testify was Matthew Moore, who was an employee of Pontotoc Loans owned by Tyler's father and who notarized the joint complaint and custody agreement. Moore testified that Britni came to his office twice, once alone to sign the initially drafted documents and a second time with Tyler to sign the amended documents. Moore did not witness anyone forcing or attempting to force Britni to sign the documents on either occasion. Britni "signed the papers immediately" once she arrived at Moore's office, and "[t]o [his] knowledge," she did not read through them. Neither Britni nor Tyler testified. At the conclusion of the hearing, the chancellor instructed both parties to submit letter briefs "in support of their respective positions."

¶12.    On April 19, 2024, the chancellor entered a letter from Butler, Tyler's former attorney, into the record. The letter had been dated on the previous day and sent for the purpose of "set[ting] the record straight" that he "did inform" Britni's attorney, Martin, "through a phone call that the Hodge[]s wanted to file a divorce under irreconcilable differences." On May 15, 2024, Martin's law office sent the chancellor a letter brief. Tyler's substituted counsel, Ford, submitted his letter brief to the chancellor on the same day.

¶13.    On May 24, 2024, the chancellor entered an order declaring the final divorce decree, the original and amended property settlement agreements, and the custody agreement void. The chancellor also dismissed Britni and Tyler's joint complaint "as false[.]" Notably, the

chancellor made the following findings:

> Tyler's counsel ignored the requirement that Britni's counsel execute the pleadings filed herein, despite knowing full and well that a separate cause of action based upon the same subject matter and seeking requests for relief on the same issues was pending (having discussed same with her attorney), and purposely presented filings and a proposed Judgment to this Court on those same issues without Britni's counsel's knowledge, signature, and approval. In this Court's opinion, this flies in the face of the mandates of Rule 11 and necessitates the striking of the Joint Complaint for Divorce as false.

> . . . .

> Most troubling for the Court is the fact that, while Britni was represented by counsel in a separately filed, pending, contested divorce matter, counsel for Tyler undertook to prepare pleadings seeking an irreconcilable differences divorce for the parties, directed Tyler as to how to obtain Britni's signature, filed the paperwork listing Britni as *"pro se,"* and wholly ignored the fact (with exception for one reference in boilerplate provisions of the Property Settlement Agreement) that Britni was represented by an attorney. Rule 4.2 of the Mississippi Rules of Professional Conduct expressly prohibits a lawyer from communicating "about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so." Tyler's counsel had no such permission or authority to obtain Britni's consent to an irreconcilable differences divorce or a property settlement agreement in her counsel's absence.

> . . . .

> This [c]ourt cannot let slide the course of action taken in this case and make a decision to uphold the divorce judgment, thereby condoning this type of inappropriate conduct by an attorney in this case, or the doors will be flown wide open for this to happen repeatedly. The [c]ourt recognizes that the result may be harsh, but justice requires that the [c]ourt follow the law.

Tyler appealed the chancellor's decision on June 21, 2024.

**STANDARD OF REVIEW**

8

¶14. This Court employs an abuse-of-discretion standard when reviewing a chancellor's grant or denial of a Rule 60(b) motion. *Cook v. NPN Prop.*, 299 So. 3d 797, 801 (¶13) (Miss. Ct. App. 2019) (citing *Doll v. BSL Inc.*, 41 So. 3d 664, 669 (¶15) (Miss. 2010)); *see also Howard v. Gunnell*, 63 So. 3d 589, 598 (¶19) (Miss. Ct. App. 2011) (citing *Lowrey v. Lowrey*, 919 So. 2d 1112, 1117 (¶16) (Miss. Ct. App. 2005)). "Generally, consideration of a Rule 60(b) motion requires that a balance be struck between granting a litigant a hearing on the merits with the need and desire to achieve finality." *Briney v. U.S. Fid. & Guar. Co.*, 714 So. 2d 962, 966 (¶13) (Miss. 1998) (internal quotation marks omitted) (quoting *Lose v. Ill. Cent. Gulf R. Co.*, 584 So. 2d 1284, 1286 (Miss. 1991)).

¶15. We also note that "our review of domestic relation matters is limited." *Breland v. Breland*, 920 So. 2d 510, 512 (¶7) (Miss. Ct. App. 2006) (citing *Carrow v. Carrow*, 741 So. 2d 200, 202 (¶9) (Miss. 1999)). "The findings of a chancellor in domestic relations matters will not be disturbed [on appeal] unless the chancellor was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied." *O'Neal v. O'Neal*, 17 So. 3d 572, 574 (¶11) (Miss. 2009) (citing *Irby v. Est. of Irby*, 7 So. 3d 223, 228 (Miss. 2009)). "This is especially true when dealing with divorce, alimony, or child support." *Breland*, 920 So. 2d at 512 (¶7) (citing *Sumrall v. Munguia*, 757 So. 2d 279, 282 (¶12) (Miss. 2000)).

## ANALYSIS

¶16. Tyler raises multiple issues on appeal. For brevity, we group and address these issues in four separate sections: (1) the timeliness of Britni's motion to set aside the final divorce

decree; (2) the provisions of this state's irreconcilable differences statute; (3) claim splitting; and (4) Tyler's alleged fraud committed upon the chancery court.

## I. Timeliness

¶17. Tyler first alleges that Britni's Rule 60(b)(4) motion was untimely filed. Rule 60(b) provides:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: . . . (4) the judgment is void. . . . **The motion shall be made within a reasonable time**, and for reasons (1), (2) and (3) not more than six months after the judgment, order, or proceeding was entered or taken.

M.R.C.P. 60(b)(4) (emphasis added). Britni filed her Rule 60(b)(4) motion to set aside the final divorce decree on February 27, 2024, nearly one year after the final divorce decree had been entered on March 6, 2023. Tyler alleges that Britni's filing her motion to set aside the final divorce decree nearly one year later is not in line with the "reasonable time" requirement set forth in the rule. "Whether a Rule 60(b) motion is made within a reasonable time is considered on a case by case basis." *Netterville v. Weyerhaeuser Co.*, 963 So. 2d 38, 41 (¶8) (Miss. Ct. App. 2007) (citing *Cucos Inc. v. McDaniel*, 938 So. 2d 238, 245 (¶22) (Miss. 2006)).

¶18. The supreme court handled a similar scenario in *O'Neal* where Gene O'Neal filed for divorce from his wife, Eva, alleging habitual cruel and inhuman treatment or, in the alternative, irreconcilable differences. *O'Neal*, 17 So. 3d at 573 (¶2). Eva answered his complaint by denying all his allegations and asserting a counterclaim for habitual cruel and

10

inhuman treatment and habitual drunkenness. *Id.* at (¶3). Months later, Gene and Eva filed a consent agreement to a divorce on the ground of irreconcilable differences. "More than one year later," Eva filed a petition to set aside the judgment of divorce because "neither party had ever withdrawn the fault-based grounds asserted in their respective complaint and counter-complaint, as required by Mississippi Code section 93-5-2(5)[.]" The chancellor denied the petition on the basis of "the untimeliness of its filing." *Id.* at (¶8). On appeal, the court addressed the timeliness of Eva's petition, holding that although Rule 60(b) requires that "motions for relief must be made within a reasonable time," *id.* at (¶¶10, 14), "[t]here is no such time limitation on motions made pursuant to Rule 60(b)(4) void judgments." *Id.* at (¶14).

¶19.    "[E]ssentially, there can be **no time limitation for relief from a void judgment** as no amount of time or delay may cure a void judgment." *Id.* (emphasis added) (citing *Kirk v. Pope*, 973 So. 2d 981, 988 (Miss. 2007); *Overbey v. Murray*, 569 So. 2d 303, 306 (Miss. 1990)). Although the motion was made approximately one year after the final divorce decree was entered—a length of time comparable to that of *O'Neal*—Britni was specifically asserting that the final divorce decree was void. Accordingly, based on the *O'Neal* case, this Court cannot find that the delay in Britni's filing the motion to set aside the final divorce decree was unreasonable.[7] Keeping in mind our limited standard of review in domestic

---

[7] It is somewhat perplexing that a party can file numerous motions seeking to enforce an order of a court for almost one year, as Britni did here, and that not constitute an "unreasonable delay" when then filing a motion to set aside that order. She filed

cases, we find the chancellor did not abuse his discretion by treating Britni's Rule 60(b)(4) motion as timely.

## II.     Irreconcilable Differences Statute

¶20.    Next, Tyler asserts that Britni's argument before the chancellor regarding the provisions of the irreconcilable differences statute should have failed. The applicable statute provides:

> (5) Except as otherwise provided in subsection (3) of this section, no divorce shall be granted on the ground of **irreconcilable differences where there has been a contest or denial;** provided, however, that a divorce may be granted on the ground of irreconcilable differences where there has been a contest or denial, if the contest or denial has been withdrawn or cancelled by the party filing same by leave and order of the court.

Miss. Code Ann. § 93-5-2(5) (Rev. 2021). It was Britni's assertion that the final divorce decree was void because she never withdrew her fault-based divorce complaint she filed on October 5, 2022. In that cause, Tyler was served with a Rule 4 summons but **never** responded to that complaint. This cause of action was still pending at the time the joint complaint was filed.

¶21.    The supreme court also thoroughly addressed this issue in the previously discussed *O'Neal* case, *see supra* ¶18. Over a year after Gene and Eva filed their consent agreement

---

approximately nine different documents with the court seeking to enforce a final divorce decree, which she now claims was void. But this Court cannot overrule precedent set by the Mississippi Supreme Court in the *O'Neal* case. *See Evans v. State*, 282 So. 3d 659, 663 (¶14) (Miss. Ct. App. 2019) (quoting *Thompson v. State*, 230 So. 3d 1044, 1055 (¶36) (Miss. Ct. App. 2017)).

12

to the irreconcilable differences divorce, Eva petitioned the court to set aside that judgment. *O'Neal*, 17 So. 3d at 574 (¶7). She asserted "neither party had ever withdrawn the fault-based grounds asserted in their respective complaint and counter-complaint, as required by Mississippi Code [s]ection 93-5-2," meaning she argued the chancellor lacked the jurisdiction to grant the irreconcilable differences divorce. *Id.* Eva's petition was denied for being untimely, and she appealed. *Id.* at (¶8). The supreme court found Eva's petition was not untimely but ultimately upheld the denial of her petition to set aside the divorce. *Id.* at (¶9). The supreme court stated that "the filing of the mutual-consent agreement detailed in subsection (3) of Section 93-5-2 **operates as a cancellation and withdrawal of the contests or denials** referenced in subsection (5)." *Id.* (emphasis added) (citing *Irby*, 7 So. 3d at 239-40).

¶22. Further, "once the chancery court has started any proceeding on the matter, neither party may withdraw the consent without leave of the court." *Id.* at 577 (¶26). The supreme court continued, stating that "in the absence of the court granting such leave, the final judgment granting the divorce based on irreconcilable differences, including the chancellor's decisions regarding property division and child custody and support, is **not rendered void** simply because the previously asserted fault-based grounds were never withdrawn or cancelled." *Id.* In conclusion, the court found "no basis in law for finding the O'Neals' divorce judgment to be void." *Id.* at 578 (¶28). In the Hodges' case, this Court cannot find that the final divorce decree was void simply because Britni never withdrew her fault-based

13

divorce complaint. Tyler and Britni filed a joint complaint and the custody agreement, "operat[ing] as a cancellation and withdrawal of the contests or denials referenced in subsection (5)." *Id.* (citing *Irby*, 7 So. 3d at 239-40).

¶23.    Also worth addressing is the case *Breland v. Breland*, 920 So. 2d 510 (Miss. Ct. App. 2006), which Tyler relied upon both before the chancery court and on appeal before this Court. In that case, Ms. Breland filed a complaint for divorce based on habitual cruel and inhuman treatment or, in the alternative, irreconcilable differences. *Id.* at 511 (¶2). Mr. Breland **did not file an answer or counterclaim to the complaint**. *Id.* (emphasis added). The court granted the Brelands a divorce based on irreconcilable differences a few months later; approximately three years later, Mr. Breland asserted that the final divorce decree was void because Ms. Breland never withdrew her fault-based complaint in accordance with section 93-5-2(5). *Id.* at 511-12 (¶5). Neither the chancery court nor this Court agreed with Mr. Breland's argument, and we affirmed the chancellor's divorce judgment. This Court explicitly held that "[w]ithout a contest or denial, a withdrawal of the fault ground is not required." *Id.* at 512 (¶9). Mr. Breland **did not file an answer or counterclaim to the complaint**; therefore, there was no need for any sort of official "withdrawal" of that complaint. *Id.*

¶24.    Here, the chancellor stated that the circumstances of *Breland* differed entirely from Tyler's case because the comparison "ignore[d] the fraud perpetuated" on the chancery court. We will address Tyler's alleged fraud in a subsequent section, but nonetheless, this Court

14

notes that Tyler's circumstances are the same as those in *Breland*. There was no contest or denial on Tyler's part; he never filed an answer or counterclaim to Britni's first complaint for divorce. Accordingly, we find "the mandates of Mississippi Code Annotated [section] 93-5-2(5) were inapplicable to the [Hodges'] divorce proceedings." *Id.*

### III. Claim Splitting

¶25. Tyler also contends that the chancellor erred by finding the final divorce decree was void under the doctrine of claim splitting. "Claim-splitting occurs when a **plaintiff** attempts to bring a duplicative action involving claims arising from a single body of operative facts against the same defendants." *Deere v. Taylor*, 394 So. 3d 991, 996 (¶22) (Miss. Ct. App. 2024) (emphasis added) (quoting *Carpenter v. Kenneth Thompson Builder Inc.*, 186 So. 3d 820, 824 (¶10) (Miss. 2014)). But "**[p]laintiffs** have no right to **maintain** two actions on the same subject in the same court, against the same defendant at the same time." *Id.* (emphasis added). Claim splitting "only applies when the first case was **maintained or was already actively being pursued in another litigation proceeding**[.]" *Id.* at 996 (¶24) (emphasis added) (quoting *Gray v. Univ. of Miss. Sch. of Med.*, 996 So. 2d 75, 81 (¶17) (Miss. Ct. App. 2008)). We note that the plaintiff in the initial complaint for divorce was Britni; she was also a plaintiff in the joint complaint for divorce. Tyler was the defendant in Britni's initial action and never filed an answer or counterclaim. Tyler was **never** a plaintiff in the first divorce complaint. Since Tyler was not a plaintiff in the first divorce complaint, Tyler cannot be in violation of the claim-splitting doctrine. *See id.* We find the chancellor erred by determining

that the final divorce decree should be set aside, partly due to Tyler's alleged claim splitting.

## IV. Fraud

¶26. Finally, Tyler contends that the chancellor erred by finding that he committed fraud on the chancery court. Of note, Britni's Rule 60(b)(4) motion alleged the final divorce decree "is void under the doctrine of claim splitting" in addition to duress; yet the court found the "fraud" most alarming. The chancellor found:

> Tyler's counsel ignored the requirement that Britni's counsel execute the pleadings filed herein, despite knowing full and well that a separate cause of action based upon the same subject matter and seeking requests for relief on the same issues was pending (having discussed same with her attorney), and purposely **presented filings and a proposed Judgment** to this Court on those **same issues without Britni's counsel's knowledge, signature, and approval.** In this Court's opinion, this flies in the face of the mandates of Rule 11 and necessitates the striking of the Joint Complaint for Divorce as false.

(Emphasis added). Mississippi law requires that "the[] elements [of fraud] . . . be shown by **clear and convincing evidence**." *Mabus v. St. James Episcopal Church*, 884 So. 2d 747, 762 (¶32) (Miss. 2004) (emphasis added) (quoting *Franklin v. Lovitt Equip. Co.*, 420 So. 2d 1370, 1373 (Miss. 1982)).[8] In conducting our review of the chancellor's decision, this Court must confirm "clear and convincing evidence" existed to find Tyler committed fraud upon the court.

¶27. "A fraud upon the court is an intentional misdeed that vitiates a judgment because the court is **misled and deceived** about the facts it relies upon when administering the law." *Doe*

---

[8] *See also Parker v. Howarth*, 340 So. 2d 434, 437 (Miss. 1976); *Crawford v. Smith Bros. Lumber Co. Inc.*, 274 So. 2d 675, 677 (Miss. 1973).

*v. Smith*, 200 So. 3d 1028, 1032 (¶14) (Miss. 2016) (quoting *Trim v. Trim*, 33 So. 3d 471, 477 (¶15) (Miss. 2010)). "[T]o qualify as fraud upon the court, there must be exceptional and compelling circumstances and the deceptive act(s) must be material and extreme." *Id.* at 1033 (¶14). Further, "[n]ot just any falsity or misstep, even if intentional, is enough for relief." *Id.*

¶28. After withdrawing as counsel, Butler (Tyler's first attorney in the chancery proceedings) wrote a letter to the chancellor—which is included in the record before us—indicating that he "did inform [Britni's attorney] through a phone call that the Hodge[s] wanted to file a divorce under irreconcilable differences" and Britni's attorney stated "that it was fine with him if that is what they wanted to do." Of course, Britni and her attorney assert that this conversation did not take place.

¶29. Additionally, Moore (the notary who worked for Tyler's father) testified that Britni came alone to sign the required documents the first time and that he noticed no sign of her being compelled to do so. And even when she and Tyler came to the office together to sign the amended documents, Moore noticed no sign of Britni being compelled or forced to sign the documents. Britni signed the joint complaint and the agreements pro se, even though her attorney, Martin, was mentioned once. This Court also finds especially persuasive the fact that while the final divorce decree was entered on March 6, 2023, Martin did not enter an appearance as counsel for Britni in this cause of action until May 24, 2023. We disagree that Britni's signing of the joint complaint and associated agreements was unlawful because her

17

attorney was not there. The fact that Britni signed the final divorce decree papers is not, by itself, evidence of fraud. Britni can hire an attorney yet, on her own, decide to act contrary to her attorney's advice. There is a suggestion in the record that her attorney was made aware of the joint complaint and allowed Britni to proceed. There is simply not sufficient evidence in this record to clearly and convincingly prove Tyler committed an intentional fraud upon the court.

## CONCLUSION

¶30. In sum, while we agree that Britni's Rule 60(b)(4) motion was filed in a reasonable time, we do not agree with the reasoning the chancellor used in his final order. Section 93-5-2(5) did not apply to the Hodges' case because the initial complaint for divorce was never contested. And there is not clear and convincing evidence to find that Tyler committed fraud upon the court. Accordingly, this Court reverses the chancellor's decision that the final divorce decree was void and remands for further proceedings consistent with this opinion as to any and all outstanding issues left unresolved prior to the final divorce decree being set aside.

¶31. **REVERSED AND REMANDED.**

**CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, McCARTY, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR. BARNES, C.J., NOT PARTICIPATING.**

18